

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00182-CR

DANIEL ANACLETO CARDON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 2729, Honorable Gordon Houston Green, Presiding

June 26, 2014

OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Daniel Anacleto Cardon, was convicted of the offense of capital murder.[1] The State did not seek the death penalty and, accordingly, appellant was sentenced to confinement in the Institutional Division of the Texas Department of Criminal Justice for life without parole.[2] Appellant appeals his conviction, alleging that the trial court committed error in the charge to the jury in two particulars. First, appellant

---

[1] *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2013).

[2] *See id.* § 12.31(a)(2) (West Supp. 2013).

contends the trial court erred by giving a partial instruction regarding causation. Next, appellant contends that the trial court erred by commenting on the evidence in the instruction to the jury regarding mandatory sentencing of anyone convicted of capital murder where the State did not seek the death penalty. We will affirm.

## Factual and Procedural Background

Appellant does not contest the sufficiency of the evidence to support the jury's verdict. Therefore, we will address only so much of the record as necessary to properly address the issues appellant raises.

Appellant was married to Lucila Cardon, also known as Lucila Perez. The relationship between appellant and Lucila can best be described as volatile. During the marriage, there were numerous arguments, physical confrontations, and separations. The conflict between the two ultimately resulted in the confrontation of June 3, 2012. According to the record, appellant went to the residence of Eric and Lana Perez in Muleshoe, Texas, where Lucila was residing. Upon confronting Lucila, appellant shot her in the face with a handgun, and she died as a result of the wound. Appellant fled the scene and was ultimately arrested the following day. Prior to his arrest, appellant was involved in a stand-off with law enforcement during which he threatened to kill himself. Ultimately, law enforcement convinced him that Lucila was still alive, and appellant surrendered to the authorities.[3] Appellant was subsequently indicted for capital murder. The State waived the death penalty, and the case was tried as a non-death-penalty capital murder.

---

[3] The officer who told appellant that Lucila was still alive admitted during trial that he knew she had died but told appellant the lie to get him to surrender.

During the trial, Eric and Lana Perez testified about the events during the early morning hours of June 3, 2012. Their testimony reflected that appellant had come to the home uninvited and, after a confrontation with Eric outside the home, appellant forced his way inside by kicking open the locked front door. Once inside the living room, appellant confronted Lucila and shot her with a handgun. Lana witnessed the shooting and testified that Lucila was backing away from appellant at the moment he shot her. According to the testimony of Eric and Lana, Lucila was not making any advance toward appellant or otherwise attempting to grab the pistol from his hand.

Appellant testified during the trial that he did not intend to shoot Lucila. According to appellant, Lucila came toward him and grabbed the pistol by the barrel and the gun went off. The medical examiner found nothing to indicate that the hands of Lucila suffered from any tattooing or stippling, which would indicate that the gun was fired while she grasped the barrel. None of the witnesses called by the State were of the opinion that the shot that killed Lucila was either a contact shot or fired from an extremely close range.

After receipt of the evidence had concluded the court prepared its charge to the jury. The two issues appellant brings forth for appeal are directed at the court's charge. In paragraph V of the court's charge, the jury was charged as follows: "A person is criminally responsible if the result would not have occurred but for his conduct." At the charge conference, appellant objected to paragraph V because the same "seems to negate the necessary *mens rea* that's defined in the statute." As a basis for the objection, trial counsel cited the trial court to the due process requirements of the 6th

3

and 14th Amendments to the United States Constitution and "corresponding amendments to the Texas Constitution and all other relevant law."

Appellant's second objection to the court's charge is directed at paragraph XV of the charge.[4] Paragraph XV states the following:

> The offense of capital murder is a capital felony. The state does not seek the death penalty in this case. An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for life without parole. You are instructed that a defendant sentenced to confinement for life without parole is ineligible for release from the Texas Department of Criminal Justice on parole.

Appellant objected to paragraph XV because the same was a comment on the evidence, specifically where it said "an individual adjudged guilty of a capital felony." Further, appellant objected that the paragraph was addressing punishment in a charge directed to the guilt/innocence phase of the trial. As a basis for his objections, appellant cited the trial court to the due process requirements of the United States Constitution as embodied in the 6th and 14th Amendments to the same. As in the first instance, appellant also cited the trial court to the "corresponding portions and amendments to the Texas Constitution and all other relevant law."

The jury convicted appellant of capital murder and pursuant to section 12.31(a)(1) of the Texas Penal Code, appellant was sentenced to confinement for life without parole in the ID-TDCJ. TEX. PENAL CODE ANN. § 12.31(a)(1). Appellant appeals his conviction, alleging that the trial court committed reversible error in its charge to the jury. Specifically, as to paragraph V, appellant contends that, by giving the jury the

---

[4] We note that at the time appellant voiced his objection to this paragraph he described it as "paragraph 16;" however, it is clear from reading the record that the objection was directed at the paragraph numbered XV and will be so treated.

4

instruction in paragraph V, the trial court misstated the level of intent required to convict appellant. As to paragraph XV, appellant contends that such an instruction was a comment on the weight of the evidence and, accordingly, appellant was harmed. For the reasons hereinafter stated, we will affirm the judgment of conviction.

## Standard of Review

When presented with a jury charge complaint, we review the charge under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (en banc). Under *Almanza*, we must first determine whether error exists in the charge and, if we find error, whether such error caused sufficient harm to compel reversal. *See Ngo v State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005) (en banc). The degree of harm necessary for reversal depends on whether the error was preserved. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (en banc). Error that was properly preserved by a timely objection will require reversal "as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. But, when error is not properly preserved, the error must have resulted in egregious harm to justify reversal. *Id.* Under either harm standard, the actual degree of harm must be assessed in light of the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the record as a whole. *Id.*

## Causation Instruction in Paragraph V

Appellant's first complaint is directed at paragraph V of the court's charge. In this paragraph, the trial court gave a partial abstract instruction on the issue of causation as found in section 6.04 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 6.04

(West 2011). A review of the application paragraphs used in the court's charge reveals that the partial causation instruction was never mentioned in any application paragraph.[5] Thus, the jury was not authorized to convict on the theory of causation. *See Hughes v. State,* 897 S.W.2d 285, 297 (Tex. Crim. App. 1994). In a situation where the trial court gives an abstract charge on a theory of law not raised by the evidence, without specific application to the facts of the case, the trial court does not err when it overrules an objection to the abstract charge. *Willis v. State,* 320 S.W.3d 853, 856 (Tex. App.—Eastland 2010, no pet.) (citing *Hughes,* 897 S.W.2d at 297). Inasmuch as the trial court did not err in overruling appellant's objection, we need go no further in our analysis of charge error on this issue.

Appellant contends that the effect of the partial instruction without inclusion in an application paragraph was to seriously undermine the defense of lack of intent. To support this proposition appellant cites the Court to no authority, either case law or statutory. We have found no cases that support appellant's contention. Rather, as stated above, the law in Texas is that, the denial of an objection to an improper abstract proposition of law that is in the instruction portion of the charge but not made a part of the application paragraph is not error. *Id.* Accordingly, appellant's first issue is overruled.

Comment on the Evidence in Paragraph XV

Appellant next contends that the trial court's inclusion of the mandatory sentencing requirement of an adult individual convicted of capital murder to life in prison

---

[5] Because the trial court gave two lesser-included offense charges, there were a total of three application paragraphs given within the charge.

without the possibility of parole amounted to a comment on the evidence.  To begin our analysis, we look first to the statutory requirement for a trial court's charge:

> a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse sympathy or excite the passions of the jury.

TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007).  The charge must contain an accurate description of the law.  *See Ex parte Varelas,* 45 S.W.3d 627, 633 (Tex. Crim. App. 2001) (en banc).  But the trial court must not convey any personal opinion in the jury charge as to the truth or falsity of any evidence.  *Russell v. State*, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988) (en banc).  A charge that "assumes the truth of a controverted issue" is an improper comment on the weight of the evidence.  *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986); *Delapaz v. State*, 228 S.W.3d 183, 212 (Tex. App.—Dallas 2007, pet. ref'd).

Turning first to the issue of whether the charge at issue contained an adequate description of the law, the answer must be yes.  *See Varelas,* 45 S.W.3d at 633.  The charge given by the trial court tracked the language of section 12.31(b) of the Texas Penal Code.  TEX. PENAL CODE ANN. § 12.31(b).  As such, the instruction was a proper statement of the law.  Next, we examine whether the charge conveys the personal opinion of the trial court as to the truth or falsity of any evidence.  *See Russell*, 749 S.W.2d at 78.  Appellant offers no explanation or analysis of how or why the charge should be construed as reflecting the personal opinion of the trial court as to the truth or falsity of any evidence.  *See* id.  Appellant's singular point seems to be that the charge,

as given, "assumes the truth of a controverted issue:" the guilt of appellant.  For purposes of our analysis, we will assume *arguendo* that appellant's position is correct.

Assuming that appellant's position is correct does not end our inquiry.  Rather, we must now evaluate the record to determine if such error has harmed appellant.  *See Ngo*, 175 S.W.3d at 744.  The State agrees that appellant made a timely objection to the paragraph of the charge at issue.  Thus, we review the record to ascertain if the trial court's action has harmed appellant, or to put it another way, we will reverse unless we determine that the error was harmless.  *See Almanza*, 686 S.W.2d at 171.

Our review of the entire record reveals that the issue of the mandatory punishment was discussed extensively during voir dire examination of the jury panel.  First, the trial judge advised the jury that, should appellant be convicted of the indicted offense, the punishment would be life without parole.  Following this explanation, both the State and appellant visited with the jury about the mandatory life without parole sentence.  The issue of punishment was not mentioned again until the charge was read to the jury.  The charge as a whole properly charged the jury with the applicable law regarding capital murder and the lesser-included offenses of murder and manslaughter.  Further, the review of the record reveals that neither the State nor the appellant ever argued or alluded to the mandatory sentencing provision contained in paragraph XV during final arguments.  Instead, the argument of the State and appellant centered on whether the intent element of the indicted offense was proved.  As to the evidence heard by the jury, the issue of appellant's intent boiled down to the jury's duty to determine which of the two conflicting stories to believe.  On the one hand, two witnesses, Eric and Lana Perez, testified that appellant shot Lucila from a distance of a

8

few feet away in a manner consistent with an intentional act; on the other hand, the jury also heard the testimony of appellant, who testified Lucila advanced toward him and grabbed the barrel of the gun, which then discharged. In such a posture, it was the jury's province to reconcile the conflicting testimony and determine whom to believe. *See Barnes v. State,* 876 S.W.2d 316, 321 (Tex. Crim. App. 1994) (en banc) (per curiam). After reviewing the entire record, we hold that the instruction given by the trial court, if error, was improper because it was simply unnecessary and did not provide any clarification of an element of the offense at issue. *See Brown v. State,* 122 S.W.3d 794, 802 (Tex. Crim. App. 2003). This would result in such error being considered a marginal error, that is to say, falling marginally on the wrong side of the "improper-judicial-comment" scale. *See id.* After a complete review, the error of the trial court, which we have assumed for purpose of this argument, was not calculated to injure the rights of appellant. *See Almanza*, 686 S.W.2d at 171. As such, the error was harmless. Appellant's issue to the contrary is overruled.

Conclusion

Having overruled appellant's two issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Publish.

9